IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| ASHLEY KHADIVI, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 21-05059-CV-SW-WBG |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## ORDER AND OPINION REVERSING THE COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS

Pending is Plaintiff Ashley Khadivi's appeal of Defendant Acting Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits. For the following reasons, the Acting Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings.

### I. BACKGROUND

Plaintiff was born in 1993 and has a high school education.[2] R. at 21, 33, 144. Her past relevant work includes being a personal shopper and delivery driver. R. at 20. In July 2019, she protectively applied for disability insurance benefits, alleging she became disabled on December 20, 2018. R. at 11, 144-45. Her application was denied, and she requested a hearing before an administrative law judge ("ALJ"). R. at 70-77.

In October 2020, ALJ Alison K. Brookins conducted a video hearing during which Plaintiff and a vocational expert ("VE") testified. R. at 27-50. On November 12, 2020, the ALJ issued her

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, who was appointed as the Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] Plaintiff graduated from high school and subsequently attended some college. R. at 33-34.

decision, finding Plaintiff is not disabled. R. at 11-22. The ALJ concluded Plaintiff's severe impairments are fibromyalgia, obesity, bipolar disorder, posttraumatic stress disorder, and autism spectrum disorder. R. at 14. Relevant to this appeal, the ALJ found Plaintiff's migraines are not severe. *Id*. The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [T]he claimant can lift/carry 20 pounds occasionally and 10 pounds frequently. [She] can stand and/or walk 6 hours in an 8-hour day, with normal breaks. [She] can sit 6 hours in an 8-hour day, with normal breaks. She can occasionally climb ramps and stairs and ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to temperature extremes, wetness/humidity, vibrations, dust/odors/fumes and pulmonary irritants, and hazards such as moving mechanical parts and working at unprotected heights. She can tolerate a moderate noise level. The claimant can understand and remember moderate complex tasks. She can maintain concentration, persistence, and pace for simple tasks. She would do best not working with the public, and she would need a small number of trusted coworkers to work comfortably. She can adapt to a simple workplace environment.

R. at 16.

Based upon her review of the record, her RFC determination, and the hearing testimony, the ALJ concluded Plaintiff could work as a laundry worker, router, and officer helper. R. at 21. The ALJ found Plaintiff was not disabled. R. at 22. Plaintiff appealed the ALJ's decision to the Social Security Administration's ("SSA") Appeals Council, which denied her appeal. R. at 1-5, 141-43. She now appeals to this Court. Doc. 1.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence

2

Case 3:21-cv-05059-WBG   Document 18   Filed 09/09/22   Page 2 of 10

is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

"As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). In evaluating for substantial evidence, a court must consider evidence supporting the Commissioner's decision as well as evidence detracting from it. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). "If, after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions, [the Court] must affirm." *See id.* (citation omitted).

## III. DISCUSSION

Plaintiff argues this matter should be remanded because the ALJ improperly assessed the severity of her migraines. *See* Doc. 11.

**A. Standard for Step Two Determination**

When determining whether an individual is disabled, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). At step two, which is at issue in this matter, the ALJ determines whether the individual has an impairment or combination of impairments that is "severe." *Id.* § 404.1520(a)(4)(ii), (c).[3] An impairment or combination of impairments is considered "severe" if it "significantly limits [an individual's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citation omitted); *Householder v. Bowen*, 861 F.2d 191, 192 n.1 (8th Cir. 1988) (citations

---

[3] If an impairment is not "severe," the claimant will be found not disabled, and the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4)(ii), (c).

3

omitted). Basic work activities are "abilities and aptitudes necessary to do most jobs," which include physical functions; capacity to see, hear, and speak; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

While a claimant has the burden of establishing her impairment or combination of impairments is severe, the burden is "not great." *See Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001); *see also Kirby*, 500 F.3d at 708 (observing "[s]everity is not an onerous requirement for the claimant to meet"). In fact, the SSA directs ALJs to exercise "[g]reat care" when "applying the not severe impairment concept" and deciding whether an individual's impairment or combination of impairments is severe. Soc. Sec. Admin., Titles II & XVI: Med. Impairments That Are Not Severe, SSR 85-28, 1985 WL 56856, at *4 (1985). According to the guidance from the SSA, if an ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities," the ALJ should not end the sequential evaluation process at step two. *Id.*; *see Gilbert v. Apfel*, 175 F.3d 602, 605 (8th Cir. 1999) (finding "contradictory evidence" in the record did not support the ALJ's decision to stop at step two).

**B.     The ALJ's Step Two Determination**

At step two, the ALJ noted the record revealed Plaintiff "suffers from migraines" but concluded they are "not a listing level impairment" and do "not meet the criteria for severity in evaluation according to SSR 19-4p, the ruling dealing with primary headache disorders." R. at 14. In reaching her determination that the migraines were not severe impairments, the ALJ referred generally to Plaintiff's medical appointments with her neurologist. R. at 14 (citing 1F (R. at 275-88)). The ALJ then cited two pages from the medical records where Plaintiff's headaches were

reported as doing much better. R. at 14 (citing 1F at 11 (R. at 285); 2F at 7 (R. at 287)). The ALJ also referenced a CT scan that was "within normal limits." R. at 14 (citing 1F/13 (R. at 287)). Without citation to any medical records or opinions from treatment providers, the ALJ found Plaintiff's migraines are "well treated when necessary" and do "not result in limitations." R. at 14.

The ALJ also made an alternative finding that "even if [Plaintiff's migraines] were to be found severe, it would not result in additional limitations" in the RFC, "which already contemplates limits on noise, simple work, and a socially restricted environment, as well as environmental limitations." *Id*. Plaintiff argues the reasons supporting the ALJ's conclusion that her migraines are not severe are "contradicted by the record" or "mischaracterizations of the law." Doc. 11 at 8.

**C.     Other Medical Evidence in the Record**

Largely absent from the ALJ's discussion of Plaintiff's migraines are other medical records evidencing Plaintiff's migraines, including records from Plaintiff's primary care physician, the emergency room, and her treating neurologist.

**(1)     Primary Care Physician's Records**

In March 2018, Plaintiff presented to Ashley Broce, D.O., her primary care physician. R. at 310-13. She complained of "[p]ounding headache[s], around the whole top of the head" triggered by "[l]oud sounds/bright light." R. at 310. She told Dr. Broce that it felt as if she "had a headache for the past 3 months." *Id*. Dr. Broce diagnosed plaintiff with migraine headaches and prescribed medications for the treatment of same. *See* R. at 312.

In April 2018, Plaintiff followed up with Dr. Broce. R. at 305-08. She complained of "daily headaches," which have caused sensitivity to light and sounds, numbness in her arms and hands, blurred vision, difficulty walking due to being off balance, and/or trouble finding words.

R. at 305. As a result, Dr. Broce changed Plaintiff's migraine medication. *Id*. In August 2018, Plaintiff reported to Dr. Broce that her headaches "have been better with medication" but she is missing "days" from work due to migraines and anxiety. R. at 300. In December 2018, Plaintiff told Dr. Broce that her "headaches have been doing better," but she had "one bad one recently." R. at 297. At that time, Dr. Broce reviewed and updated her current medications, which included medications for the prevention and treatment of migraine headaches. R. at 296.

In February 2020, Plaintiff reported to Dr. Broce that she continues to take prescription medication for her migraines, in addition to medical marijuana. R. at 437. She indicated her migraines were doing better with a frequency of three to four per month. *Id*. Dr. Broce instructed Plaintiff to continue her medication prescriptions. R. at 439. When Plaintiff was seen in August 2020 by Natasha Kataria, M.D., Plaintiff confirmed her history of migraines and indicated she continued to use Amitriptyline as a prophylaxis and Naproxen, Fioricet and Imitrex as abortive medications for her headaches. R. at 431, 433. Dr. Kataria ordered she stop taking Imitrex for headaches, but continued the prescriptions for Fioricet and Amitriptyline. *Id*. at 433.

From these records, the ALJ only cited to the December 2018 appointment where Plaintiff said her headaches had improved. R. at 14 (citing 2F/7 (R. at 297)). The ALJ failed to address that Plaintiff consistently sought medical treatment for migraine headaches and was consistently prescribed medications for same.

**(2)    Emergency Room Records**

In March 2018, Plaintiff presented to the emergency room complaining of, among other things, a headache with sound and light sensitivity, nausea, and dizziness. R. at 365, 373. She reported suffering from a headache for two weeks and a migraine for two days. R. at 373. Plaintiff's "sharp" pain was located "diffusely about the head . . . more notable in the frontal region." R. at 373. She also experienced blurred vision and saw multicolored spots. *Id*. While at

the emergency room, Plaintiff was administered three medications, two of which were given intravenously, to alleviate her headache. R. at 367, 374. Upon discharge, she was prescribed a medication for headaches. R. at 376. Neither these records nor the fact that Plaintiff sought treatment at an emergency room for migraines are referenced in the ALJ's decision.

### (3) Neurologist's Records

Despite generally referring to the entirety of Plaintiff's treatment records with her neurologist, Gulshan Uppal, M.D., the ALJ ignored Dr. Uppal's observations and reports that directly contradict the ALJ finding that Plaintiff's migraines are not severe. For example, Plaintiff experienced "sharp and pressure-like" headaches, worsened by stress, on an almost daily basis in May 2018. R. at 275. Although her migraines had improved in August 2018, Plaintiff experienced tension headaches "a lot of days" in August 2018. R. at 279. As a result of both appointments, Dr. Uppal increased Plaintiff's medication. R. at 277, 281. The ALJ did not discuss these records or the necessary increase in Plaintiff's migraine medication.

### (4) Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified she had to work less and eventually stopped working because of her migraines. R. at 35-36. She informed the ALJ that she experiences approximately three migraines per month, and depending on when she takes her medication, the migraines last anywhere from two hours to "a couple days." R. at 37-38. In addition to medication, Plaintiff testified that she treated her migraines by going to a dark room, putting ice packs on her forehead and the back of her neck, taking cool showers or baths, sleeping several hours. R. at 37-38. Although the ALJ considered Plaintiff's testimony, she did not address how frequently Plaintiff experiences migraines, her treatment thereof, and the length of time she suffers from migraines. *See* R. at 17.

7
Case 3:21-cv-05059-WBG   Document 18   Filed 09/09/22   Page 7 of 10

### D. The ALJ Committed Error at Step Two

The ALJ was obligated to exercise "great care" when "applying the not severe impairment concept" and deciding whether Plaintiff's impairment or combination of impairments is severe. SSR 85-28, 1985 WL 56856, at *4. Moreover, the SSA specifically directed the ALJ not to end the sequential evaluation process at step two if she was "unable to determine clearly the effect of" Plaintiff's impairments. *Id*. Here, the ALJ relied on improper generalizations of Plaintiff's visits with her neurologist and her doctor on two occasions when her headaches were doing better. R. at 14. Despite some improvement, the longitudinal records demonstrate Plaintiff was consistently treated for migraine headaches and her treatment providers consistently prescribed various medications for headaches. Further, the ALJ's observation that Plaintiff's condition had improved is not dispositive as to whether the condition is a severe impairment at Step Two. *See Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003) ("It is possible for a person's health to improve, and for the person to remain too disabled to work.").

The ALJ also observed that Plaintiff's CT scan was normal. But in the context of migraine headaches, an ALJ's reliance on a normal MRI or other scan to assess severity is misguided. *See Jenkins v. Kijakazi*, No. 21-03003-CV-S-BP, 2022 WL 357185, at *2, n.2 (W.D. Mo. Feb. 7, 2022) (observing "it appears that MRIs and other scans are used to rule out other possible causes of headaches; they do not detect the presence *or severity* of migraines.") (emphasis added). In this case, the normal CT scan is consistent with the diagnosis and treatment for migraine headaches.

At a minimum, the record presents contradictory evidence of whether Plaintiff's migraines are severe. Thus, the ALJ could not "determine clearly" the effect of Plaintiff's migraines and should have continued the sequential evaluation process related thereto. *See* SSR 85-28, 1985 WL 56856, at *4; *Gilbert*, 175 F.3d at 605. By concluding the analysis of Plaintiff's migraines at step

two, the ALJ failed to comply with SSR 85-28, and thus, committed legal error requiring reversal and remand.

E.  **The ALJ Committed Error When Determining Plaintiff's RFC**

In addition, the ALJ erroneously determined Plaintiff's RFC. In her decision, the ALJ stated she "must consider all of the claimant's impairments, including impairments that are not severe," when determining Plaintiff's RFC. R. at 13 (citing 20 C.F.R. §§ 404.1520(e), 404.1545; and Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 (1996)). The ALJ determined "even if [Plaintiff's migraines] were to be found severe, [they] would not result in additional limitations" in the RFC because it places "limits on noise, simple work, and a socially restricted environment, as well as environmental limitations." R. at 14. However, when determining Plaintiff's RFC, the ALJ did not discuss limitations associated with Plaintiff's migraines - to wit: missing work for several days a month, sleeping, secluding herself in a dark room, and lowering her body temperature. While the record demonstrates noise triggered Plaintiff's migraines at times, there is nothing in the record suggesting her migraines could be avoided by limiting noise exposure. There is also nothing in the record to suggest the limitations in the RFC of simple work, a socially restricted environment or environmental limitations (such as limitations relate to temperature, humidity, vibrations, dust/odors/fumes) would avoid the onset of a migraine headache. By not fully considering limitations associated with Plaintiff's non-severe impairments when determining her RFC, the ALJ failed to comply with the applicable regulations and committed legal error.

F.  **The ALJ's Errors Were Not Harmless**

If an ALJ errs, reversal of the ALJ's decision is not required if the error was harmless. *See Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). "To show an error was not harmless, [Plaintiff] must provide some indication that the ALJ

would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917. Plaintiff has demonstrated if her migraines had been properly considered and found severe and/or her RFC included limitations associated with her migraines, the ALJ would have decided the matter differently.

During the hearing, Plaintiff's counsel asked the VE if a hypothetical person with the ALJ's RFC would be precluded from all employment if she had to either miss work four times a month or be off-task twenty percent of the workday. R. at 49. The VE testified the added limitation eliminated all "competitive employment." *Id*. Accordingly, if the ALJ had determined Plaintiff's migraines were severe, or if she had incorporated limitations in the RFC associated with Plaintiff's migraines, the ALJ would have likely found Plaintiff disabled. Thus, on this record, the Court cannot conclude the ALJ's errors were harmless.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Acting Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: September 9, 2022              */s/ W. Brian Gaddy*
                                                           W. BRIAN GADDY
                                                           UNITED STATES MAGISTRATE JUDGE